**VU, INC., a Colorado corporation,
Plaintiff–Appellee,**

**v.**

**PACIFIC OCEAN MARKETPLACE, INC.,
a Colorado corporation, d/b/a Pacific
Ocean Market; Pacific Ocean International Supermarket; and Trong Lam,
individually, Defendants and Counterclaim Plaintiffs–Appellants,**

**v.**

**Asian Supermarket, Inc., Counterclaim
Defendant–Appellee.**

No. 00CA0690.

Colorado Court of Appeals,
Div. II.

May 10, 2001.

Rehearing Denied July 19, 2001.

Certiorari Dismissed Nov. 15, 2001.

Issacson, Rosenbaum, Woods & Levy, P.C., Blain D. Myhre, Pamela A. Johnson, Lisa C. Walter, Denver, CO, for Plaintiff–Appellee and Counterclaim Defendant–Appellee.

Law Offices of Gary S. Cohen, Gary S. Cohen, Christine Van Coney, Denver, CO, for Defendants and Counterclaim Plaintiffs–Appellants.

Opinion by Judge JONES.

In this forcible entry and detainer (FED) action, defendants, Pacific Ocean Marketplace, Inc., Pacific Ocean International Supermarket, and Trong Lam (collectively, tenant), appeal the summary judgment entered against them and in favor of plaintiff, Vu, Inc. (Vu), and counterclaim defendant, Asian Supermarket, Inc. (ASI). We affirm.

In a companion case announced contemporaneously, *Vu, Inc. v. Pacific Ocean Marketplace, Inc.*, (Colo.App. No. 99CA2317, May 10, 2001)(not selected for publication)(*Vu, Inc.I* ), we also affirm the judgment of possession entered in favor of Vu, the landlord in both cases.

Because the judgment of possession in *Vu, Inc. I* was appealed, and jurisdiction was removed from the trial court, tenant filed counterclaims against Vu, and claims against counterclaim-defendant, ASI, in this separate case. ASI had opened a competing oriental supermarket in the same shopping center.

In this case, tenant alleged breach of contract and promissory estoppel claims against Vu and unfair competition and intentional interference with contract claims against ASI. This dispute centered around whether a lease agreement between a predecessor landlord and tenant contained an enforceable exclusive-use right that forbade Vu, as successor landlord, from leasing space to another oriental supermarket. Tenant relied heavily on extrinsic evidence to support its claims.

The trial court, treating Vu's and ASI's motions to dismiss as motions for summary judgment, granted the motions. This appeal followed.

I.

Tenant first contends that the trial court erred in granting summary judgment. We disagree.

Summary judgment is a drastic remedy that is only appropriate when there

are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that reasonably may be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Bebo Construction Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78 (Colo.1999). We review the grant of summary judgment *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo. 1995).

Here, in reviewing the summary judgment, we must examine the lease agreement to determine whether, as a matter of law, Vu breached any contractual duty. Without such a breach, tenant's claim against Vu for breach of contract and its claim against ASI both fail. Furthermore, tenant's claim of promissory estoppel against Vu fails if there is a clear, unambiguous, and enforceable contract. *See American Pride Co-op. v. Seewald,* 968 P.2d 139 (Colo.App.1998).

Contract interpretation is a question of law that is reviewed *de novo,* and, thus, we need not defer to the trial court's interpretation. The primary goal of contract interpretation is to determine and give effect to the intent of the parties. Such intent is to be determined primarily from the language of the contract itself. Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. Extrinsic evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract. Absent any ambiguity, a court must not look beyond the four corners of the agreement to determine the meaning intended by the parties. *Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373 (Colo.2000).

Here, as we also have concluded in *Vu, Inc. I,* the lease agreement is clear and unambiguous, contains all the essential terms, and further provides that it is the entire agreement between the parties at the time of execution. *See Nelson v. Elway,* 908 P.2d 102 (Colo.1995).

Tenant asserts that, prior to the execution of the lease agreement, the parties agreed that tenant would have a right to exclusive use, but simply failed to put it in writing.

However, a review of the record indicates to the contrary. The lease agreement does not contain either express or implied language that would indicate that tenant was granted, either explicitly or implicitly, a right to exclusive use. Rather, the record clearly indicates that the landlord had, on other occasions, granted exclusive use rights to other tenants and that written provisions granting such rights were included in those other lease agreements. Thus, the absence of such a provision in tenant's lease agreement strongly indicates that the parties did not bargain for any such provision, and this supports the trial court's ruling that the lease agreement contains no such right.

## II.

Tenant also contends that Vu, as the successor landlord, failed sufficiently to inquire, beyond the unambiguous language of the agreements, as to the rights and obligations of the parties. Again, we disagree.

Tenant provided Vu with a "tenant estoppel certification" stating that all rights and obligations of the parties were only those contained in the lease agreement. The delivery of the estoppel certificate prevents tenant from now claiming that a different set of facts existed than those mentioned in the certificate. *See Black's Law Dictionary* 572 (7th ed.1999). Here, the certificate states in no uncertain terms that the "lease agreement represents the entire agreement between the parties."

Further, tenant alleges that the oral agreements were already in effect when the lease agreement was initially executed. Thus, the parties had ample opportunity to put those alleged agreements in writing, but failed to do so.

Concerning this issue of first impression in Colorado, we agree with the rationale of the Alabama Supreme Court in *Sports World, Inc. v. Neil's Sporting Goods, Inc.,* 507 So.2d 480 (Ala.1987). There, the tenant sought to enforce an oral covenant of exclusive use

against a successor landlord despite having executed a tenant estoppel certificate that did not mention the alleged oral covenant.

The Alabama Supreme Court held that the alleged exclusive use covenant was not enforceable against the subsequent purchaser, which had no notice, either actual or constructive, of the restriction on the property. The court opined that, because the tenant executed the tenant estoppel certificate, which did not mention any alleged oral agreement, and failed to put anything related to the alleged agreement in writing, even though it had ample opportunity to do so, it could not later "complain about a situation that it could have prevented had it acted properly." *Sports World, Inc. v. Neil's Sporting Goods, Inc.*, supra, 507 So.2d at 483.

The rationale of *Sports World* suggests not only that candor and fair dealing should prevail in transactions concerning leases, but also that oral agreements that affect the rights of parties to a written agreement should, themselves, be put in writing so that fair, actual notice is given to all parties to the lease, and to those parties' legal representatives, successors, and assigns. Failure to commit such oral agreements to writing properly bars their enforcement, and excuses any duties or obligations that would accrue to others had actual notice of the oral agreement been given.

By presenting Vu with the estoppel certificate, and by failing to commit any alleged oral agreement to writing, tenant ratified the prior lease agreement and did not add any additional terms, including any mention of the oral agreements it now contends were a part of the original contract. These acts, and failures to act, excused any duties that would have accrued to Vu if notice had been given and made any inquiry by Vu beyond the terms and conditions of the lease agreements unnecessary.

Thus, we conclude that the trial court did not err in refusing to enforce the alleged oral agreement.

Based on the resolution of these issues, we regard it as unnecessary to consider tenant's other contentions.

Accordingly, the judgment is affirmed.

PLANK and CASEBOLT, Judges, concur.