STATE of Colorado, ex rel. John W. SUTHERS, Attorney General, Plaintiff–Appellant,

v.

The MANDATORY POSTER AGENCY, INC., d/b/a Colorado Food Service Compliance Center, d/b/a The Colorado Labor Law Poster Service; Steven J. Fata; Thomas Fata; and Joe Fata, Defendants–Appellees.

No. 09CA0253.

Colorado Court of Appeals, Div. VI.

Dec. 24, 2009.

Certiorari Dismissed March 10, 2010.

John W. Suthers, Attorney General, Jay B. Simonson, First Assistant Attorney General, LeeAnn Morrill, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellant.

Greenberg Traurig, LLP, Claude C. Wild III, Jeffrey M. Lippa, Cuneyt A. Akay, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge HAWTHORNE.

In this Colorado Consumer Protection Act (CCPA) case, the State of Colorado appeals the trial court's pre-trial order dismissing its claim under section 6–1–105(1)(d), C.R.S. 2009, and the court's judgment, entered after a bench trial, for defendants, The Mandatory Poster Agency, Inc. (MPA), Steven J. Fata, Thomas Fata, and Joe Fata, on its remaining claims. We reverse the dismissal order and remand for further proceedings because the People's complaint pled a subsection (1)(d) claim. Because we conclude that "knowingly," as used in the CCPA, requires actual knowledge, we affirm the judgment for defendants.

## I. Factual Background

MPA is a private corporation located in Lansing, Michigan, that sells workplace posters to employers using direct mail solicitations. The posters are designed to comply with state and federal law posting requirements. Defendants Thomas Fata, Steven J. Fata, and Joe Fata serve as the corporation's president, vice-president, and secretary and treasurer, respectively.

In Colorado, MPA conducts business under the names The Colorado Labor Law Poster Service (CLLPS) and Colorado Food Service Compliance Center (CFSCC). Since 2003, MPA has mailed over 149,000 CLLPS solicitations to Colorado employers and filled over 18,000 orders. It mailed over 6,000 CFSCC solicitations and sold posters to 170 Colorado employers.

The CLLPS solicitations represented that failing to post certain notices violated the Occupational Safety and Health Act and the Uniformed Services Employment and Reemployment Rights Act, possibly subjecting the violator to criminal penalties and civil liability, including assessments up to $7,000. MPA included a disclosure in its CLLPS solicitations, which reads, "The Colorado Labor Law Poster Service is a non-governmental organization providing mandatory workplace posters and does not have a contract with any government agency. Certain posters may also be available for free from the issuing governmental agencies."

The CFSCC solicitation inaccurately represented that state and federal food codes impose on food service establishments a requirement to post notices and that penalties

for failing to post approved hand washing posters include fines up to $2,500, license suspension or revocation, civil liability, and imprisonment. After learning the solicitation contained this error, defendants sent all customers who had ordered hand washing posters in Colorado a letter informing them of the solicitation's inaccuracies and offering them a full refund. The CFSCC solicitations contained a disclaimer, which provided, "The CFSCC is a non-governmental organization providing mandatory Approved Hand Washing Posters." A subsequent version of the disclaimer further provided that CFSCC "does not have a contract with any governmental agency."

With every poster order MPA filled, defendants included a letter stating, "Our posters are guaranteed, and if you are not satisfied for any reason, the posters may be returned to us for a full refund of the purchase price."

After the Colorado Department of Health and Environment received inquiries from employers asking whether the department had sent the solicitations and whether the stated posting requirements and penalties were accurate, the state filed a complaint alleging that defendants had violated the CCPA. The complaint specifically alleged defendants violated section 6–1–105(1)(b), (c), (e), and (u), C.R.S.2009; however, the subsection (u) claim is not on appeal here. The state did not specifically allege defendants violated section 6–1–105(1)(d), but such a claim was included in the parties' stipulated trial management order.

The relevant statutory subsections provide:

A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person:

. . .

(b) Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;

(c) Knowingly makes a false representation as to affiliation, connection, or association with or certification by another;

(d) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith.

§ 6–1–105(1), C.R.S.2009.

Prior to trial, the court granted defendants' motion to dismiss the state's subsection (1)(d) claim. Following a bench trial, it issued a judgment for defendants concluding they had not violated the CCPA because the inaccurate information in MPA's notices resulted from negligence.

The state appeals.

## II. Analysis

### A. Complaint's Sufficiency

The state contends that the trial court erred in granting defendants' motion to dismiss its section 6–1–105(1)(d) claim. We agree.

Prior to trial, the court granted the motion because the state's complaint failed to expressly plead a violation, and its prayer for relief did not request relief, under subsection (1)(d). Thus, the court reasoned, defendants had no notice of that claim.

C.R.C.P. 12(b)(5) motions to dismiss test the complaint's legal sufficiency to determine whether the plaintiff has asserted a claim for which relief may be granted. *Hemmann Mgmt. Services v. Mediacell, Inc.*, 176 P.3d 856, 858 (Colo.App.2007). In evaluating a motion to dismiss, the court must accept all material factual averments as true and must view the complaint's allegations in the light most favorable to the plaintiff. *Id.* Dismissing claims under Rule 12(b)(5) is proper only where a complaint fails to give defendants notice of the claims asserted. *Id.* We review a trial court's ruling on a motion to dismiss de novo. *Id.* at 859.

Defendants rely on *Ehrlich Feedlot, Inc. v. Oldenburg*, 140 P.3d 265, 272 (Colo.App.2006), in asserting that we should

review the court's ruling for an abuse of discretion because their motion was made orally in limine. Although the motion was made in limine, defendants sought to dismiss the subsection (1)(d) claim because the People allegedly failed to plead it. The substance rather than the name or denomination given a pleading determines its character and sufficiency. *People ex rel. Cory v. Colorado High School Activities Ass'n,* 141 Colo. 382, 385, 349 P.2d 381, 384 (1960). Thus, we review the trial court's ruling under C.R.C.P. 12(b)(5). We therefore reject defendants' argument because *Ehrlich Feedlot* reviewed a trial court's finding that a party had not established good cause for failing to timely file a certificate of review. 140 P.3d at 272. Accordingly, the standard of review applied in *Ehrlich* is inapposite.

■ Defendants next argue that pursuant to C.R.C.P. 9(b) an alleged CCPA violation must be pled specifically. Rule 9(b) requires that fraud or mistake averments state the circumstances constituting fraud or mistake with particularity. We need not decide whether complaints alleging a CCPA violation require pleading with particularity under Rule 9(b) because we conclude the state's complaint satisfied the rule's more stringent pleading requirements. *See Duran v. Clover Club Foods Co.,* 616 F.Supp. 790, 793 (D.Colo.1985) (CCPA claims are subject to Rule 9(b)'s particularity requirement; plaintiffs satisfied rule's requirement because it only requires that claim identify circumstances constituting fraud and plaintiffs alleged sufficient facts to apprise defendants of alleged deceptive trade practices' nature); *see also Heller v. Lexton-Ancira Real Estate Fund, Ltd., 1972,* 809 P.2d 1016, 1022 (Colo. App.1990) (even under Rule 9(b) it is sufficient to state main facts constituting fraud; amended complaint adequately set forth facts which put defendants on notice of CCPA claim), *rev'd on other grounds,* 826 P.2d 819 (Colo.1992).

Section 6–1–105 (1)(d) provides, in relevant part, "A person engages in a deceptive trade practice when ... such person ... [u]ses deceptive representations or designations of geographic origin in connection with goods or services."

Here, the complaint contained the following allegations:

- Defendant MPA is a Michigan corporation, and its principal place of business is located in Michigan.
- Defendant conducted business in Colorado under the assumed names Colorado Food Service Compliance Center and The Colorado Labor Law Poster Service.
- Defendants listed a Colorado address for both entities that was nothing more than a mail drop. Defendants did not maintain an office, or conduct any business operations, in Colorado other than mailing flyers from Michigan to Colorado.
- Defendants' solicitations violated the CCPA.
- Defendants' misrepresentations included misleading consumers into believing that MPA was a Colorado company or a government or government-affiliated company dedicated to compliance with governmental regulations when defendants are a Michigan company engaged in selling posters available for free through true governmental entities.

■ Thus, the complaint contained facts alleging defendants deceived consumers about their goods' geographic origin. We conclude these allegations were sufficiently particular to satisfy Rule 9(b)'s requirements. *See Scott Sys., Inc. v. Scott,* 996 P.2d 775, 780 (Colo.App.2000).

Defendants further argue that the state failed to plead a subsection (1)(d) claim because the complaint's prayer for relief did not specifically request relief under that subsection. However, "the relief ultimately granted is governed not by the demand [set forth in the complaint], but by the facts alleged, the issues, and the proof [at trial]." *Township Homeowners Ass'n v. Arapahoe Roofing & Sheet Metal Co.,* 844 P.2d 1316, 1318 (Colo.App.1992); *see also* C.R.C.P. 54(c) ("every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings"). As discussed above, the state pled sufficient facts to support its subsection (1)(d) claim. Additionally, the state requested the court to

enter "[a] ny such orders as this Court may deem just and proper to effectuate the purposes of the [CCPA]."

■ Finally, defendants would not have been prejudiced by the court's allowing the subsection (1)(d) claim to proceed to trial. Prior to trial, the parties filed a stipulated trial management order that expressly set forth the subsection (1)(d) claim as a claim remaining for trial. Thus, defendants were given notice that the state intended to try this claim.

Because the complaint adequately pled a claim for relief under section 6–1–105(1)(d), we reverse the trial court's order and remand for the court to reinstate that claim.

## B. "Knowingly" Element of CCPA Claim

The state next contends that the trial court improperly interpreted the "knowingly" requirement in subsections (1)(b), (c), and (e). We discern no error.

■■ We construe the CCPA to give its terms their plain and obvious meaning. *Crowe v. Tull,* 126 P.3d 196, 201 (Colo.2006). Our task is to effectuate the General Assembly's intent, and we avoid constructions that would defeat it. *Id.*

The state argues that "knowingly" is satisfied by actual or constructive knowledge. We reject this assertion and conclude that "knowingly," as used in the CCPA, requires actual knowledge.

Certain CCPA subsections, including those at issue here, require that a person "knowingly" commit a deceptive trade practice. §§ 6–1–101(a)–(c), (e), (*o*), (ll), C.R.S.2009. Other provisions provide liability where the person committing the deceptive trade practice "knows or should know" of the misrepresentation. §§ 6–1–101(f)–(g), C.R.S.2009. Thus, the legislature chose to limit liability to circumstances where the violator has actual knowledge in certain subsections, while other subsections premise a violation on either actual or constructive knowledge. The different mental states required to violate certain subsections reflect the legislature's recognition that actual and constructive knowledge are distinct terms. *Colorado Water Conservation Bd. v. Upper Gunnison River Water*

*Conservancy Dist.,* 109 P.3d 585, 597 (Colo. 2005) (we do not presume that legislature used language idly and with no intent that meaning should be given to its language).

The state argues that the CCPA's underlying public policy of protecting consumers supports interpreting "knowingly" as requiring actual or constructive knowledge. However, because the legislature's intent is clear, we need not resort to other statutory interpretation principles. Moreover, the legislature chose to impose differing state of mind requirements for certain violations, and we will not substitute our judgment for the General Assembly's. *See People v. Zinn,* 843 P.2d 1351, 1354 (Colo.1993).

The state argues that the trial court conflated the CCPA's knowledge and intent requirements. We discern no basis for reversal.

In its conclusions of law, the trial court stated:

[T]o constitute a deceptive trade practice under Colorado law, "a false or misleading statement must be made with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Campfield v. State Farm Mut. Auto. Ins. Co.,* 532 F.3d 1111, 1120 (10th Cir.2008), *quoting Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo.2003).

The Colorado Supreme Court has held that liability under the CCPA may be implicated only by intentional conduct—*i.e.,* the defendant knowingly engaged in a deceptive trade practice. *Crowe v. Tull,* 126 [P.3d] 196, 204 (Colo.2006). "The CCPA provides an absolute defense to a misrepresentation caused by negligence or an honest mistake." *Id.*

The court concluded that the inaccuracies in defendants' posters and solicitations were made negligently, not recklessly, knowingly, or intentionally. It did not adopt an incorrect standard for imposing liability, but contrasted defendants' negligent actions with a knowing or intentional misrepresentation. Because the trial court specifically found that defendants had not acted knowingly, the

mental state required for the alleged CCPA violations, reversal is not warranted. *Crowe,* 126 P.3d at 204 ("[a] CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice").

### III.   Disclosure

 Finally, the state contends the trial court erred in concluding that defendants' solicitations, posters, and disclaimers were not deceptive. We discern no error.

Reviewing the trial court's conclusion poses a mixed legal and factual question. *See Lawry v. Palm,* 192 P.3d 550, 558 (Colo.App.2008). The trial court, as fact finder, is charged with assessing the witnesses' credibility and determining the evidence's sufficiency, probative effect, and weight. *In re Estate of Breeden v. Gelfond,* 87 P.3d 167, 172 (Colo.App.2003). Accordingly, we must defer to the trial court's determinations, unless they are clearly erroneous or unsupported by the record. *Lawry,* 192 P.3d at 558. If evidence conflicts, we may not substitute our judgment for the trial court's. *Id.*

The trial court concluded that defendants' solicitations, posters, and disclaimers were not deceptive. The court noted that the logo on the posters, which the state argued resembled an American bald eagle, was clearly a bird. The court further reasoned, "[T]he people who actually read the documents easily determined that ... [they] were not government-generated. Defendants cannot be held liable for those customers who believed the solicitation came from the government, but who did not read or understand the clear and conspicuous disclosure."

Disclosure may eliminate an otherwise deceptive trade practice. *See May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 978 (Colo.1993) (disclosure is an accepted method for preventing deceptive advertising). The conclusion that the solicitation as a whole was not deceptive was a factual issue for the trial court to resolve. *See Lawry,* 192 P.3d at 558. Its conclusion

that the witnesses who read the disclosure understood that the documents were not government generated is supported by the record. Each state witness admitted that he or she failed to read the complete solicitation and disclosure or conceded that the disclosure clarified that MPA was a nongovernmental agency. Because the trial court's ruling is supported by the record, we will not disturb it on review. *See id.*

The order dismissing the state's section 6–1–105(1)(d) claim is reversed, and the case is remanded to the trial court to reinstate that claim and conduct further proceedings. The court's judgment on the state's remaining claims is affirmed.

LICHTENSTEIN and CRISWELL *, JJ., concur.