20CA0923 Pacific Express v Anderson 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA0923 City and County of Denver District Court No. 18CV30070 Honorable Andrew P. McCallin, Judge Pacific Express Stables, LLC, a Colorado limited liability company, Plaintiff-Appellant, v. Ryan Anderson and CF LoDo, LLC, a Colorado limited liability company, Defendants-Appellees. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division III Opinion by JUDGE FURMAN Lipinsky and Brown, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Andrew Oh-Willeke, Denver, Colorado, for Plaintiff-Appellant Business Management Law Group, Stanley V. Jezierski, Broomfield, Colorado, for Defendants-Appellees 
 1 ¶ 1 In this commercial lease case, Tenant, CF LoDo, LLC, leased the basement of a downtown Denver building from Landlord, Pacific Express Stables, LLC, to run a weight training and exercise business. The Lease had a three-year term that began in July 2013. CF LoDo’s owner, Ryan Anderson, personally guaranteed the Lease on behalf of CF LoDo. ¶ 2 In October 2014, a dispute arose between the parties about both an increase in the amount of certain lease payments, called “triple net charges,” and CF LoDo’s right to audit the building’s operating costs. CF LoDo vacated the basement at the expiration of the Lease in September 2016, without the dispute being resolved. ¶ 3 Pacific Express then sued CF LoDo and Anderson, as guarantor, for breach of the Lease. Pacific Express alleged that CF LoDo breached the Lease by not making certain Lease payments, including the increased triple net charges, and by causing excessive wear and tear to the basement. Pacific Express sought $407,669.70 in damages. ¶ 4 After a bench trial, the court found for CF LoDo on “all of [Pacific Express’s] claims,” except for a few “minor,” undisputed claims. The court then awarded Pacific Express $2,760.00 in 
 2 damages on the “minor” undisputed claims and $2,172.70 in pre- and post-judgment interest. The court found that Anderson was jointly and severally liable for these damages as CF LoDo’s guarantor on the Lease. ¶ 5 After determining that CF LoDo was the “prevailing party” for purposes of a fee-shifting provision in the Lease, the trial court awarded CF LoDo $51,435.00 in attorney fees and costs. ¶ 6 On appeal, Pacific Express contends that the trial court (1) erred by finding that CF LoDo was not liable to pay the increased triple net charges under Paragraph 6(i) of the Lease and (2) abused its discretion by determining that CF LoDo was the “prevailing party” under the fee-shifting provision of the Lease. Because we disagree with Pacific Express’s contentions, we affirm the judgment. ¶ 7 Both Pacific Express and CF LoDo request an award of their appellate attorney fees and costs. We deny Pacific Express’s request, but we grant CF LoDo’s request. I. Increased Triple Net Expenses ¶ 8 We first conclude that the trial court did not err in finding that CF LoDo was not liable to pay the increased triple net charges under Paragraph 6(i) of the Lease. 
 3 A. Standard of Review ¶ 9 Interpreting a lease is a question of law we review de novo. See Vu, Inc. v. Pac. Ocean Marketplace, Inc., 36 P.3d 165, 167 (Colo. App. 2001). Our “primary goal” when interpreting a lease “is to determine and give effect to the intent of the parties.” Id. We determine this intent primarily from the language of the lease itself. See id. And when a written lease is “complete and free from ambiguity,” we will consider it as expressing the intent of the parties and will enforce it according to its plain language. Id. ¶ 10 But whether a party has performed its obligations under a lease or has breached is a question of fact. See Lake Durango Water Co. v. Pub. Utils. Comm’n, 67 P.3d 12, 21 (Colo. 2003). We must defer to a trial court’s findings of fact unless they are so clearly erroneous as to find no support in the record. See Loveland Essential Grp., LLC v. Grommon Farms, Inc., 251 P.3d 1109, 1116-
17 (Colo. App. 2010); see also Van Gundy v. Van Gundy, 2012 COA 194, ¶ 12 (“We review a court’s factual findings following a trial to the court only for clear error.”). ¶ 11 When a trial court sits as fact finder, it “is charged with assessing the witnesses’ credibility and determining the evidence’s 
 4 sufficiency, probative effect, and weight.” State ex rel. Suthers v. Mandatory Poster Agency, Inc., 260 P.3d 9, 15 (Colo. App. 2009). So, “we must defer to the trial court’s determinations, unless they are clearly erroneous or unsupported by the record.” Id. And, if “evidence conflicts, we may not substitute our judgment for the trial court’s.” Id. B. Paragraph 6(i) of the Lease ¶ 12 Paragraph 6(i) of the Lease reads: Tenant shall pay its Proportionate Share of the Building’s operating costs (NNN) in monthly installments, on the 15th of each month (in the instance where the 15th falls on a Saturday or Sunday, the Tenant shall pay its Proportionate Share of the Building’s operating costs on the following Monday), based upon Landlord’s good faith estimate, from time to time, of the Building’s operating costs. Tenant’s initial payment is based upon Landlord’s estimate of the building’s operating costs for the year in question, and the monthly payments thereof (and future payments) are subject to increase or decrease as determined by Landlord from time to time to reflect an accurate estimate of actual operating costs. Within one hundred twenty (120) days or a reasonable time thereafter after the end of each calendar year, Landlord shall deliver to Tenant a statement of operating costs for such calendar year and Tenant shall pay Landlord or Landlord shall credit Tenant (or, if such adjustment is at the end of the Term, pay Tenant), within thirty (30) 
 5 days of receipt of such statement, the amount of any excess or deficiency in Tenant’s payment of its portion of operating costs for the calendar year. Tenant shall have the right to audit Landlord’s operating costs. ¶ 13 Thus, under Paragraph 6(i), CF LoDo had to pay its proportionate share of the building’s operating costs as “triple net charges.” The “initial” amount of triple net charges that CF LoDo had to pay was based on Pacific Express’s estimate of its operating costs for the first year of the Lease. But Pacific Express had the right to increase the amount of triple net charges that CF LoDo had to pay on a monthly basis if the increase reflected an “accurate estimate” of Pacific Express’s “actual” operating costs. ¶ 14 And, under Paragraph 6(i), Pacific Express had to deliver a statement of its operating costs for the calendar year to CF LoDo within 120 days or a reasonable time after the end of that calendar year. CF LoDo then had to pay any deficiency in its payment of its share of triple net charges for the calendar year, or Pacific Express had to credit or pay CF LoDo for any excess amounts CF LoDo had paid for its share of triple net charges for the calendar year, within thirty days of receiving the statement of Pacific Express’s operating costs. See id. 
 6 ¶ 15 Paragraph 6(i) also granted CF LoDo the right to audit Pacific Express’s operating costs. C. The Trial and the Court’s Findings ¶ 16 Pacific Express claimed, among other things, that CF LoDo breached Paragraph 6(i) of the Lease by not paying the increased triple net charges. To support this claim, Pacific Express relied on the testimony of its manager and on Exhibit 3, a spreadsheet prepared by the manager that purported to show the building’s operating costs and CF LoDo’s payment history during the relevant time period. ¶ 17 In response, CF LoDo argued that it was not liable to pay any increase in triple net charges. It argued that the manager was not credible; some numbers in Exhibit 3 “were made up, in some cases, out of whole cloth”; and the increased triple net charges was an “overreach” by Pacific Express. Relying on Anderson’s testimony and emails exchanged between Anderson and the manager, CF LoDo argued that Pacific Express breached Paragraph 6(i) of the Lease by not allowing CF LoDo to audit the records of the building’s operating costs in a timely manner and by not providing the records to CF LoDo in a format that would allow CF LoDo to audit them. 
 7 ¶ 18 Following the trial, the court entered detailed oral findings of fact and conclusions of law. The court addressed Pacific Express’s claim for increased triple net charges. ¶ 19 The trial court interpreted Paragraph 6(i) of the Lease as follows. CF LoDo is required “to pay its proportionate share of the building’s operating expenses described as triple net.” Pacific Express will “set forth an initial estimate of what these triple net costs are.” But Pacific Express may pass on an increase in these costs to CF LoDo. So, Pacific Express can “revise [its estimate of CF LoDo’s amount of triple net charges] at the end of a calendar year.” Pacific Express must deliver a statement of its operating costs to CF LoDo within 120 days of the end of the calendar year, and CF LoDo must pay “the amount of any excess or deficiency in [its] payment of its portion of operating cost for [the] calendar year” within thirty days of receipt of the statement. CF LoDo also “has a right to audit the operating costs.” ¶ 20 The court then made findings regarding the events in this case: 
 8 • Pacific Express’s “initial estimate” of CF LoDo’s proportionate share of triple net charges “was set at $1,500 in 2013 when [the] Lease started.” • On October 8, 2014, the manager “on behalf of [Pacific Express] sent an email to [Anderson] on behalf of the Defendants and stated to him that the triple net costs [had] increased.” The manager attached a spreadsheet to this email that purported to show the building’s operating costs. • “[T]wo days after receiving this statement, [Anderson] sent a short email on” October 10, 2014, “to [Pacific Express] in which he stated he would like to exercise his right to conduct an audit.” • Nothing happened for “five to six months.” • On March 9, 2015, Pacific Express sent an email to Anderson in which “it demand[ed] that the increase[d] triple net costs be paid.” • “At some point in either March or April” of 2015, Anderson went to the manager’s home to attempt an audit of the building’s operating costs, and the manager laid out the receipts for these costs on her kitchen table. 
 9 • But Anderson could not conduct an “audit of these receipts because they were so disorganized” and “in such disarray.” • On May 22, 2015 — in “the last word on this audit” — the manager emailed Anderson “stating that she will hire someone and bill [CF LoDo] in order to organize her records.” ¶ 21 The trial court found there was “no credible evidence” of “the increased triple net cost.” ¶ 22 The trial court also found that Pacific Express was obligated under Paragraph 6(i) of the Lease “to provide meaningful records so that [CF LoDo] can conduct an audit.” But the court found that “the lack of organization, the disarray in the records, and the lack of any credible evidence of the increased costs prevented [CF LoDo] from exercising a meaningful audit.” So, the trial court found: [Pacific Express] has breached its obligation . . . to provide any verification of the actual costs that would support an increase in the triple net [charges]. So the Court finds that [CF LoDo] was not obligated to pay the increase[d] triple net cost that [Pacific Express] maintains were due. ¶ 23 Regarding Exhibit 3 — the spreadsheet that the manager maintained — the court found as follows: 
 10 I’m unable to find any aspect of [the manager’s] testimony credible. So I do not accept this spreadsheet as any credible evidence of the increased triple net costs and find that no credible evidence at all was presented by [Pacific Express] of any increased triple net costs that would trigger an increased payment obligation by [CF LoDo] under Paragraph 6([i]) of the Lease. D. Analysis ¶ 24 On appeal, Pacific Express contends that the trial court erred by interpreting Paragraph 6(i) of the Lease to mean that (1) CF LoDo’s obligation to pay the increase in its amount of triple net charges was “postponed by the Lease provision allowing [CF LoDo] to request an audit of” Pacific Express’s operating costs and (2) “audits were [to be] conducted at [Pacific Express’s] expense.” ¶ 25 But we need not address these contentions because the trial court found that CF LoDo had no obligation to pay the increased triple net charges. Pacific Express presented no credible evidence that its claimed increase in operating costs was based on an “accurate estimate of actual operating costs” as required by Paragraph 6(i). And because Pacific Express presented no evidence showing that its demand for increased payment from CF LoDo “reflect[ed] an accurate estimate of actual operating costs,” it could 
 11 not demonstrate that CF LoDo breached the Lease by failing to pay the increase. See Vu, Inc., 36 P.3d at 167. ¶ 26 Yet, Pacific Express contends that it did not have to prove to the trial court that its operating costs had increased because CF LoDo had to pay the increased triple net charges “on the basis of [the] statement” Pacific Express delivered to CF LoDo. This does not help Pacific Express. Paragraph 6(i) says that Pacific Express can only increase CF LoDo’s triple net charges (and CF LoDo is only obligated to pay these charges) if the increase reflects an “accurate estimate” of Pacific Express’s “actual operating costs.” See id. Pacific Express did not prove to the trial court that the increase in CF LoDo’s triple net charges reflected an “accurate estimate” of Pacific Express’s “actual operating costs.” The record supports the trial court’s finding that “no credible evidence at all was presented by [Pacific Express] of any increased triple net costs that would trigger an increased payment obligation by [CF LoDo] under Paragraph 6(i) of the Lease.” See State ex rel. Suthers, 260 P.3d at 15; Loveland Essential Grp., 251 P.3d at 1116-17. ¶ 27 Pacific Express’s reliance on Koerner v. Wilson, 85 Colo. 140, 142-45, 274 P. 737, 738 (1929), for the proposition that CF LoDo 
 12 had to prove, as an affirmative defense, that “the statement provided by [Pacific Express] to [CF LoDo] was inaccurate in some specific way” is misplaced. In Koerner, the lessee of an orchard sued both the sheriff of Fremont County and the lessee’s father’s creditor to recover damages for the conversion of some of the lessee’s apples and apple boxes. See id. at 140-45, 274 P. at 737-
38. The sheriff, at the request of the creditor, entered the orchard, seized the apples and apple boxes, and sold them to satisfy a judgment against the lessee’s father. See id. After a trial, the court entered judgment for the lessee and against defendants. See id. at 140-42, 274 P. at 737. On review to our supreme court, defendants contended that even though they did not plead fraud as a defense, the trial court erred by not admitting certain evidence of fraud between the lessee and the lessee’s father. See id. at 142-45, 274 P. at 738. In rejecting this contention, the supreme court concluded: “Fraud is, under the circumstances of this case, clearly an affirmative defense, and must be pleaded before evidence thereof becomes admissible.” Id. at 143, 274 P. at 738. ¶ 28 But, unlike in Koerner, CF LoDo did not seek to admit evidence that Pacific Express committed fraud. Instead, CF LoDo 
 13 denied that it had to pay the increase in its amount of triple net charges. So, it was the burden of Pacific Express, as plaintiff, to prove that CF LoDo had to pay the increase in its amount of triple net charges but did not. See Saturn Sys., Inc. v. Militar, 252P.3d 516, 529 (Colo. App. 2011) (concluding that “a party attempting to recover on a claim for breach of contract must prove,” among other things, “the existence of a contract . . . [and] failure to perform the contract by the defendant” (quoting W. Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992))). The trial court found that Pacific Express did not meet its burden. See State ex rel. Suthers, 260 P.3d at 15; Loveland Essential Grp., 251 P.3d at 1116-17. II. Prevailing Party ¶ 29 We also conclude that the trial court did not abuse its discretion by determining that CF LoDo was the prevailing party to apply the fee-shifting provision of the Lease. ¶ 30 When a claim exists for violating a contractual obligation, “the party in whose favor the decision or verdict on liability is rendered is the prevailing party” for purposes of awarding attorney fees under the fee-shifting provision of the contract. Dennis I. Spencer Contractor, Inc. v. City of Aurora, 884 P.2d 326, 327 (Colo. 1994); 
 14 see Wheeler v. T.L. Roofing, Inc., 74 P.3d 499, 503-04 (Colo. App. 2003) (A “party prevails if the issue of liability is resolved in its favor, even where damages are not awarded.”). But, when “both parties have prevailed in part on the question of liability, the trial court is free to determine which is prevailing for purposes of applying [the] fee-shifting” provision. Wheeler, 74 P.3d at 504. ¶ 31 We review a trial court’s determination of which party is the prevailing party for an abuse of discretion. See id. at 503. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. See Genova v. Longs Peak Emergency Physicians, P.C., 72 P.3d 454, 458 (Colo. App. 2003). ¶ 32 Paragraph 20(f) of the Lease contains the following fee-shifting provision: “In case suit shall be brought to enforce any provisions of this Lease, the prevailing party shall (in addition to other relief granted) be awarded all reasonable attorney’s fees and costs resulting from such litigation.” ¶ 33 In the trial management order, Pacific Express claimed that CF LoDo “breached the Lease with Pacific Express by not making payments due under the Lease for rent including triple net Lease 
 15 payments, when due, and also owes late fees and interest under the Lease as a consequence of failing to pay these amounts when due under the Lease.” Pacific Express claimed that “the total amount due for unpaid Lease payments, interest and late fees,” minus CF LoDo’s security deposit, was $97,815. ¶ 34 Pacific Express also asserted numerous “claims” that CF LoDo “breached the Lease with Pacific Express by physically damaging the Premises, in excess of ordinary wear and tear, in a manner not permitted by the Lease.” These “claims” included: • “Damage to the cement floor of the Premises with a repair cost actually incurred of approximately $30,000.” • “Damage to other surfaces on the Premises such as walls, pillars and doors with a repair cost actually incurred of approximately $9,000.” • “Damage to the garage wall caused when an invitee or licensee of [CF LoDo] backed a truck into the wall estimated to require approximately $5,000 to repair.” • “Damages to the ceiling and roof estimated to require approximately $5,000 to repair.” 
 16 • “Damages to the paint on a handicapped ramp estimated to require approximately $4,000 to repair.” • “Damages to a fire escape which was used so heavily that it failed in non-emergency circumstances, in violation of City and County of Denver ordinances, despite the fact that it was not part of the portion of the building [that CF LoDo] was authorized to use, in an amount that is estimated to cost $50,000 to repair.” • “There were other miscellaneous instances of damage to other parts of the premises such as cabinets, doors, windows, screens, in an amount of incurred and estimated costs combined to repair of approximately $2,000 or more.” Pacific Express provided a list of the costs of repairing the concrete floor, which included “Concrete floor spot repairs” at a cost of $1,180. ¶ 35 Pacific Express stated that it was seeking damages for breach of the Lease in a total amount of $407,669.70. Pacific Express also claimed that “Anderson is jointly and severally liable for all amounts for which [CF LoDo] is liable” because “Anderson personally guaranteed all obligations of [CF LoDo] under the Lease.” 
 17 ¶ 36 CF LoDo’s defenses included, among other things, that “[d]efendants have paid all amounts due under the Lease,” “[Pacific Express] has not provided proof to substantiate its alleged operating costs and other charges of additional rent,” “[d]efendants deny that it caused any damages to the Premises beyond normal wear and tear,” and “[defendants deny that some of the alleged damages were the result of actions of the Defendants, including any damage to the railings and fire escape.” ¶ 37 Both parties called numerous lay and expert witnesses to testify. Most of this testimony addressed Pacific Express’s claim of excessive wear and tear. ¶ 38 The manager testified extensively about Pacific Express’s claims of unpaid Lease payments and excessive wear and tear. ¶ 39 At closing arguments, CF LoDo admitted liability for unpaid rent for September 2016; unpaid triple net expenses (at the initial estimate) for July, August, and September 2016; some excessive wear and tear to the concrete floor (in the form of nails or screws put into the concrete floor) with a repair cost of $1,180; and some excessive wear and tear to two columns, drywall, baseboards, and 
 18 painting. But CF LoDo denied liability on all Pacific Express’s other claims for breach of the Lease. ¶ 40 In its oral findings of fact and conclusions of law, the court found as follows regarding the claims of excessive wear and tear: [B]ecause the evidence that was provided of this, of the damage that is [caused] by [Pacific Express] primarily . . . came from [the manager]. And I want to talk about her testimony with regard to this excessive wear and tear because it gave the Court a very troubling insight into her theory as to what [CF LoDo] caused by way of damage to the building. And quite frankly, after I was able to review all of this, and reflect on her testimony, and reflect on exactly what it is that she is claiming from the Defendants here by way of excessive wear and tear, I was unable to find any portion of her testimony credible at all. . . . . As I go through this and I discuss just how [Pacific Express] views the wear and tear claim, this really is a case of an attempted overreaching by [Pacific Express]. And this overreaching of the damages that Pacific Express claims was caused by [CF LoDo] in this case causes me to question the reliability of any of the information that [she] testified to. ¶ 41 The court then made specific findings that Pacific Express had presented no credible evidence to support its claims of excessive 
 19 wear and tear to the fire escape, handicap ramp, garage wall, most of the concrete floor, and the ceiling. ¶ 42 The trial court then found: So the Court finds that . . . the major items of damage to the property was simply not supported by any credible evidence presented by [Pacific Express]. And so therefore, I reject [Pacific Express’s] theory as to any excessive wear and tear. . . . . So I find that [Pacific Express] has failed to sustain its burden of proof as to breach of contract for excessive wear and tear. And except for the minor items I’ll talk about at the end, I am going to enter judgment for [CF LoDo] on this aspect of [Pacific Express’s] breach of the Lease claim. ¶ 43 The court found, as discussed, that there was no credible evidence to support Pacific Express’s claim that CF LoDo breached the Lease by failing to pay increased triple net charges. ¶ 44 The court then found: [W]ith the exception of what I’m about to say, I find in favor of [CF LoDo] and against [Pacific Express] on all of [Pacific Express’s] claims in this case. I find under the Lease that . . . [CF LoDo] is a prevailing party, with the exception of the minor items here. 
 20 The Defense admitted that they failed to pay any triple net costs in July, August, and September of 2016. The triple net cost that is applicable is the initial estimate of $1,500 per month for . . . these three months. [CF LoDo] also admitted that . . . it failed to pay the September rent. So these triple net costs for these months and this rent payment shall be due. And then the Defense also admitted that there were some . . . damage to the property that it would be appropriate and fair for it to pay, such as the nails that were in the floor . . . . This is the only damage that was supported, the damage to the floor from nails or the screws . . . was $1,180. The Court will grant that as an element of excessive wear and tear. However, the other damages to the property that [CF LoDo] admitted would be appropriate. There’s some damage to the drywall, there was some damage to columns in the middle, and then there was some painting, all of which [CF LoDo] admitted would be appropriate as elements of excessive wear and tear. However, no specific dollar figures could be generated for the cost of repairing these specific damaged items. And as the Court found, [Pacific Express] failed to present any credible testimony in support of an excessive wear and tear claim. So while [CF LoDo] is admitting that it would pay for these kinds of things, there’s been a failure of [Pacific Express’s] burden of proof by a preponderance of the evidence to show what the cost of these elements of damages would be. 
 21 So the only element of damage that the Court will impose against [CF LoDo] for excessive wear and tear is the $1,180 for repairing the concrete floor where the screws and nails were . . . . So at closing argument, the Defense stated that after the credit is given for the $8,600 for the security deposit, there -- there is $1,680 owing for triple net and rent costs, and then also $1,180 owing for excessive wear and tear, for a total damage of $2,760. And I’m going to grant that in favor of [Pacific Express] on these discrete items and against [CF LoDo]. ¶ 45 We conclude that the trial court did not abuse its discretion by determining that CF LoDo was the prevailing party for purposes of the fee-shifting provision of the Lease. See Wheeler, 74 P.3d at 503. ¶ 46 Both CF LoDo and Pacific Express prevailed in part on the question of liability. See id. at 504. CF LoDo prevailed on most of the disputed issues of liability. See Dennis I. Spencer Contractor, 884 P.2d at 332 (“[W]here a party prevails on the disputed main issue [in a case], even though not to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney’s fees.”) (citation omitted). The trial court found that CF LoDo was not liable to pay the increased triple net expenses and was not liable for most of the alleged 
 22 excessive wear and tear, including excessive wear and tear to the fire escape, handicap ramp, garage wall, most of the concrete floor, and the ceiling. ¶ 47 But Pacific Express prevailed on a few — ultimately undisputed — issues of liability. The trial court found that CF LoDo was liable to pay one month of unpaid rent and three months of unpaid triple net expenses at the initial estimate and was liable for some items of excessive wear and tear to the concrete floor, drywall, columns, and painting. Pacific Express also prevailed on whether Anderson was liable for any damages assessed against CF LoDo as guarantor. ¶ 48 Because both CF LoDo and Pacific Express prevailed in part on the question of liability, the trial court had proper authority to, and was in the best position to, determine who the prevailing party was for the fee-shifting provision of the Lease. See Wheeler, 74 P.3d at 504. ¶ 49 Yet, Pacific Express contends that it was the prevailing party because there were only two claims in this case — one against CF LoDo for breach of the Lease and one against Anderson as guarantor — and it “was the party in whose favor the verdict on 
 23 liability was rendered on all of the claims in the case.” We disagree. Even assuming there were only two claims, Pacific Express ignores that CF LoDo prevailed in part on the question of liability. The trial court found that CF LoDo was not liable to pay the increased triple net expenses and was not liable for most of the claimed excessive wear and tear. So, because both Pacific Express and CF LoDo prevailed in part on the question of liability, regardless of how many claims were brought, the trial court could determine the prevailing party. See id. ¶ 50 Pacific Express also contends that CF LoDo only prevailed on some “factual elements in the damages component of [the] breach of contract claim,” not on the question of liability. We disagree. The trial court found that CF LoDo did not breach the Lease when it refused to pay the increased triple net expenses and did not breach the Lease by causing excessive wear and tear to, among other things, the fire escape, handicap ramp, garage wall, most of the concrete floor, and the ceiling. These were findings on whether CF LoDo was liable for breach of the Lease, not on the question of the damages owed due to a breach of the Lease. 
 24 ¶ 51 Pacific Express’s reliance on Dennis I. Spencer Contractor for the proposition that it was the prevailing party is misplaced. In Dennis I. Spencer Contractor, a contractor brought two claims against the City of Aurora: one claim for breach of a construction contract (which did not include a fee-shifting provision) and one claim for breach of a settlement agreement (which included a fee-shifting provision). See 884 P.2d at 327. A jury found the City liable for breach of both the construction contract and the settlement agreement. After finding that the City’s conduct in breaching the settlement agreement gave rise to the breach of the construction contract, the jury only awarded damages to the contractor for breach of the construction contract. See id. at 327-28, 334. The trial court then determined that because the City avoided paying damages for its breach of the settlement agreement, the City was the “prevailing party” under the fee-shifting provision of the settlement agreement and awarded attorney fees to the City. Id. at 328. Our supreme court reversed the trial court’s determination that the City was the “prevailing party,” and concluded that “where a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on 
 25 liability is rendered is the prevailing party for purposes of awarding attorney fees.” Id. at 327. ¶ 52 But, unlike Dennis I. Spencer Contractor, in which the contractor prevailed entirely on the question of liability, both Pacific Express and CF LoDo prevailed in part on the question of liability under the Lease. So, the trial court could determine, as between Pacific Express and CF LoDo, the prevailing party. See Wheeler, 74 P.3d at 504. ¶ 53 Pacific Express’s opening brief on appeal provides quotes from Paragraphs 11, 14, 20(b), 21(a), and 22(a) of the Lease, but Pacific Express did not argue that, or how, these paragraphs applied. Instead, in the opening brief, Pacific Express consistently argued that it was the “prevailing party” under Paragraph 20(f) of the Lease. In its reply brief, Pacific Express argued that Paragraphs 11, 14, 20(b), 21(a), and 22(a) of the Lease “provide a separate and independent basis entitling the Landlord to an award of attorney fees, even if attorney fees are not available under the prevailing party clause of the Lease,” so “a prevailing party analysis is unnecessary, and Landlord is entitled to its attorney fees and costs.” 
 26 ¶ 54 But Pacific Express has not cited to, and we are not aware of, any place in the record where it raised this argument to the trial court or where the trial court ruled on this argument. See C.A.R. 28(a)(7)(A) (In the opening brief, the appellant must state “whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled.”); O’Quinn v. Baca, 250 P.3d 629, 631 (Colo. App. 2010) (concluding that appellate courts are under “no obligation” to undertake a search of the record “to determine whether (and, if so, how) issues had been raised and resolved in the trial courts”). Thus, we will not address this argument for the first time on appeal. See Kinney v. Keith, 128 P.3d 297, 310 (Colo. App. 2005) (“Arguments not presented to or ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.”). III. Pacific Express’s Request for Appellate Attorney Fees and Costs ¶ 55 Pacific Express requests its appellate attorney fees and costs as the “prevailing party” under C.A.R. 39.1 and the “contractual fee-shifting agreement in the Lease.” Because Pacific Express has not prevailed on any issue on appeal, we deny this request. 
 27 IV. CF LoDo’s Request for Appellate Attorney Fees and Costs ¶ 56 CF LoDo requests its appellate attorney fees and costs as the prevailing party under Paragraph 20(f) of the Lease. We grant this request. CF LoDo has prevailed on all issues in this appeal and therefore is the prevailing party. ¶ 57 We remand the case to the trial court to determine CF LoDo’s reasonable attorney fees and costs on appeal and to award this amount to CF LoDo. V. Conclusion ¶ 58 The judgment is affirmed, and the case is remanded to the trial court to determine CF LoDo’s reasonable attorney fees and costs on appeal and to award this amount to CF LoDo as the prevailing party under Paragraph 20(f) of the Lease. JUDGE LIPINSKY and JUDGE BROWN concur.